IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:                                            *
                                                  *
ELIZABETH NORRIS                                  *          Case No: 25-14367-MCR
                                                  *          (Chapter 11)
        *Debtor*                                  *
                                                  *
_____          *

### AMENDED OBJECTION TO
### PROOF OF CLAIM FILED BY FIRST SAVINGS MORTGAGE CORPORATION
### (CLAIM NO. 1-1)

Debtor Elizabeth Norris, proceeding *pro se*, files this Amended Objection to Proof of

Filed by First Savings Mortgage Corporation for Claim No. 1-1, pursuant to 11 U.S.C. §§ 502,

506(a) and 506(d), Federal Rules of Bankruptcy Procedure 3001 and 3007, and Local

Bankruptcy Rule 3007-1.

This Amended Objection is based primarily on First Savings Mortgage Corporation's

("FSMC") June 12, 2026 Supplemental Opposition, submitted to the Maryland Circuit Court, in

which FSMC materially changed its position regarding the status of the 2007 Deed of Trust, after

filing its secured Proof of Claim in this Court. FSMC repeatedly represented to this Court in

their filings, including in the proof of claim under oath, that it held a present secured lien.

FSMC's newly-asserted June 12, 2026 position aligns with Debtor's long-standing

position that FSMC's lien "was released" in 2010 and "remains" released.

The Debtor moves this Court for the entry of an Order disallowing Claim No. 1-1

("Claim"). In support thereof, Debtor states as follows:

### I. INTRODUCTION

1.  This Amended Objection is being filed because FSMC's June 12, 2026 Supplemental

    Opposition in the related state-court litigation materially changed the factual basis for the

    secured status asserted in Proof of Claim No. 1-1. The Debtor filed a Motion to Continue

1

the July 2, 2026 Confirmation hearing to allow adequate time to evaluate the effect of FSMC's new position. Because the Court has not yet ruled on that motion, the Debtor files this Amended Objection to preserve her rights.

2. The Debtor is an individual proceeding under Chapter 11 and remains a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

3. On July 10, 2025, FSMC filed Proof of Claim No. 1-1 in this case, asserting an active **secured** claim in the amount of $2,139,761.53 based upon an alleged lien arising from the September 28, 2007 Deed of Trust for Debtor's personal home ("Claim" or "FSMC Proof of Claim"). On August 13, 2025, the Debtor timely filed an objection to FSMC's Proof of Claim [Dkt 45].

4. This Court previously directed the parties to proceed with litigation in the Montgomery County, Maryland Circuit Court (case no. 485915-V) regarding the lien dispute ("State Court Litigation").

5. Since filing Proof of Claim No. 1-1, FSMC has taken a materially different position concerning the secured status of the 2007 Deed of Trust.

6. On June 12, 2026, FSMC filed a Supplemental Opposition in the State Court Litigation. FSMC now states that *"the 2007 Deed of Trust was released"* by the October 8, 2010 *Certificate of Satisfaction* recorded in the Montgomery County Land Records and that the *"2007 DOT remains (erroneously) released,"* unless equitable relief is granted ("June 12, 2026 Supplemental Filing"). *See* Exhibit A.

7. On June 15, 2026, the Norris attorney filed a response stating, among other things, FSMC's newly-alleged position "directly contradicts the position FSMC advanced to date. See Supp. Opp. at 6-7, Complaint at Counts I and III." *See* Exhibit B.

2

8.  FSMC's June 12, 2026 Supplemental Filing is material because their Proof of Claim No. 1-1 asserts *secured* status based upon the same 2007 Deed of Trust, but now FSMC admits that deed "was released" in 2010 and "remains" released unless a court grants equitable relief. *See* Exhibit A.

9.  On June 29, 2026 First Savings filed, in this court, "Surreply to Defendants' Reply to First Savings' Opposition to Defendants' Supplemental Filing" ("Surreply"). On page 2, FSMC again states that the 2007 Deed of Trust is ***"deemed released 'as of record' in the land records."*** Debtor submits that this admission confirms that FSMC did not hold a perfected recorded lien as of the petition date of May 15, 2025 ("Petition Date"). *See* Exhibit D.

10. FSMC's present litigation position fundamentally changes the factual basis upon which Proof of Claim No. 1-1 was filed. Accordingly, the Court should reexamine whether the Claim continues to be entitled to prima facie validity under Federal Rule of Bankruptcy Procedure 3001(f), and whether FSMC can satisfy its burden of proving that Claim No. 1-1 is an allowed secured claim.

11. FSMC's June 12, 2026 state filing and June 29, 2026 Surreply bankruptcy filing changes the evidentiary basis of its Proof of Claim. Accordingly, FSMC bears the burden of proving, by competent evidence, the factual and legal basis for the secured status asserted in their Proof of Claim No. 1-1.

12. Furthermore, even if FSMC were to contend that any portion of its Claim survives only as an unsecured contractual obligation following the release of its Deed of Trust, the Debtor disputes that any such claim remains enforceable. As discussed below, under every potentially applicable Maryland statute of limitations framework, any action to enforce the underlying construction loan expired years before Proof of Claim No. 1-1 was filed.

3

Accordingly, FSMC's Claim is unenforceable under applicable non-bankruptcy law within the meaning of 11 U.S.C. § 502(b)(1).

13. A claim based upon a presently existing lien is materially different from a claim seeking equitable restoration of lien rights in the future.

14. FSMC did not amend or withdraw its secured Proof of Claim No. 1-1 after acknowledging that the Deed of Trust was released on June 12, 2026. Instead, it continues to seek treatment as a secured creditor in this bankruptcy case while pursuing equitable restoration of its lien in state court.

15. The Debtor objects to the secured status, allowance, amount, and classification of FSMC's Claim.

16. As of the Petition Date, FSMC held no recorded security instrument in the Montgomery County Land Records supporting the secured status asserted in Proof of Claim No. 1-1.

17. FSMC's own current litigation position undermines its asserted Claim No. 1-1.

18. Accordingly, the Debtor requests that this Court sustain this Amended Objection, determine that FSMC has not established an allowed secured claim as of the petition date, and grant such further relief as appropriate.

19. FSMC's current position is not an isolated representation. FSMC has engaged in a continuous pattern of asserting secured status within this and other Federal bankruptcy proceedings and in State and Federal courts for over 15 years. *See* Exhibit C, which is a chronological summary of FSMC's judicial representations regarding secured status and lien rights.

## II. JURISDICTION AND VENUE

20. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

21. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) because it concerns the allowance or disallowance of claims against the estate.

22. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III. RELEVANT BACKGROUND

23. On or about January 12, 2004, the Debtor and her husband (the "Norrises") purchased an unimproved lot known as 15623 Riding Stable Road, Laurel, MD 20707.

24. On September 29, 2006, the Norrises refinanced the prior loan with a construction-to-permanent loan through FSMC. This construction loan was evidenced by a Deed of Trust recorded on or about October 17, 2006, among the Land Records of Montgomery County, Maryland at Book 33167, page 222 ("2006 DOT").

25. The construction loan was modified one year later to allow a six-month extension.

26. In its Closing Instructions dated September 28, 2007, FSMC expressly directed the settlement attorney to add language to the top of the deed of trust on page 1 showing that it is a modification to the 2006 deed of trust ("Closing Instructions").

27. On page 2 of its Closing Instructions, FSMC instructs the settlement attorney:

> "ATTORNEY TO ADD LANGUAGE TO THE DEED OF TRUST
> IN REFERENCE TO MODIFICATION."

See Exhibit F, Bates no. 281-282, FSMC-produced documents.

28. The settlement attorney followed FSMC's explicit instructions and included the modification paragraph to the top of page 1 in the 2007 deed, citing the 2006 loan number and prior deed reference. See Exhibits F.

29. On or about September 28, 2007, the purchase money deed of trust and note for the construction loan was modified to allow for the six-month extension with a new maturity date of March 27, 2008. See Exhibit H.

5

30. This modification for the construction loan was evidenced by the deed of trust recorded on or about October 8, 2007, among the Land Records of Montgomery County at Book 34934, page 089 ("2007 Modification"). *See* Exhibit H. Page 1, ¶1, of the Deed of Trust states:

> "This Deed of Trust is to act as modification of Loan No. XXXX6071 secured by Deed of Trust at Liber 33167, Folio 222 for the benefit of the same lender and same borrower into new loan number XXXX7064 to provide a six month extension."

31. The Recording Affidavit (liber 34934, folio 104) and State of Maryland Land Instrument Intake Sheet (liber 34934, folio 105) show the 2007 deed of trust to be a modification. The stamp on page 1 of the deed shows that Land Records did not charge any recordation or transfer taxes. *See* Exhibits I and J.

32. On February 14, 2008, prior to the maturity date, FSMC informed the Debtor that they could not provide the permanent mortgage for the construction-to-permanent loan as obligated in the closing documents.

33. On July 29, 2009 and April 27, 2010, the Norrises timely issued TILA rescissions for violations under the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq §1635 and others. *See* Exhibit O.

34. On February 24, 2010, FSMC filed an Order to Docket with sworn affidavits claiming default under the 2007 Modification. *See* Exhibit Q.

35. On or about October 8, 2010, Creditor First Savings Mortgage Corporation recorded among the Land Records of Montgomery County a *Certificate of Satisfaction* "acknowledg[ing] that the indebtedness secured by a certain Deed of Trust... recorded among the Land Records of Montgomery County on October 17, 2006 at... Book 33167, Page 222 has been fully paid and discharged." *See* Exhibit E, *Certificate of Satisfaction* recorded at 40148/396.

36. FSMC repeatedly promised to provide the permanent mortgage. FSMC President, Mr. Larry Pratt, stated "we are going to provide the permanent mortgage as I committed to you a few months ago." *See* Exhibits K, L, M.

37. All of the FSMC's loan statements, entitled "Construction Loan Statement," identified the loan as a construction loan. Exhibit N.

38. FSMC did not fund the full amount of the loan and $31,890.00 remains outstanding. FSMC's Construction Loan Statement showed undisbursed loan proceeds owed to Debtor, including Mr. Pratt's July 14, 2014 email. *See* Exhibits M and N.

39. On March 12, 2015, FSMC commenced a foreclosure action based upon the 2006 Deed of Trust and averred that the September 28, 2007 instrument was a modification of the 2006 Deed of Trust. FSMC now contends this security interest "was released," "remains" released, and no longer effective of record. *See* Exhibit P.

40. For years, FSMC consistently represented in various court filings, including under oath, that it held a valid and enforceable lien against the Property and therefore was a secured creditor. In their June 12, 2026 Supplemental Filing, FSMC finally admits for the first time that the lien "was released" in 2010 and "remains" released. *See* Exhibits C, A, D.

41. FSMC initiated foreclosure proceedings based upon the September 29, 2006, Deed of Trust, which it now acknowledges was released. FSMC and its Substitute Trustee issued two *Notice of a Trustee's Sale* dated June 14, 2016 and August 31, 2016, and advertised Debtor's home for auction in newspapers. *See* Exhibit P.

42. Debtor filed for bankruptcy protection to prevent foreclosure sales predicated upon the very security instrument that FSMC now contends no longer remained effective of record.

43. On December 13, 2019, FSMC issued a letter claiming default under the 2006 deed of trust and stated they would "assert power of sale, foreclose the deed of trust and sell the property…Enclosed is a Notice of Intent to Foreclose required by Maryland law." This is the deed of trust that FSMC now asserts "was released." *See* Exhibit T.

44. FSMC's Notice of Intent to Foreclose (NOI) dated December 13, 2019, represented that it was a secured creditor:

> "Name of Secured Party: First Savings Mortgage Corporation
> Telephone Number of Secured Party: (703) 883-9010
> Lien Position: First"

*See* Exhibit U. On June 12, 2026, FSMC now asserts their lien "was released."

45. FSMC failed to record any continuation statement before March 26, 2020, twelve years from the stated maturity date of March 27, 2008, shown on the 2007 Modification DOT.

46. On May 15, 2025, the Debtor filed a petition under Chapter 13 of the U.S. Bankruptcy Code, which was converted to Chapter 11 on September 9, 2025 ("Petition").

47. On June 25, 2025, FSMC filed a Motion for Relief From Automatic Stay ("Relief Stay Motion") [Dkt. 25]. In that Motion:

   a. ¶4-¶8 – FSMC asserted to this court, "First Savings **is a secured** creditor of Debtor (and Co-Debtor) including pursuant to the 2007 Deed of Trust (Ex. 6)…."

   b. ¶29 – FSMC cited the 2016 agreement that was read into the record on December 14, 2016 in Debtor's prior bankruptcy wherein FSMC represented to Debtor that it was a secured creditor. In that case, FSMC also asserted in all court filings and before Judge Catliota that it was a **secured** creditor when it was not.

c. ¶45 and footnote in ¶55 – FSMC chastises that the Debtor "incorrectly lists First Savings' claim under Schedule F as an unsecured nonpriority claim" and argues that the Debtor should have listed them as a **secured** claim.

d. ¶33, ¶34, ¶46, ¶54, ¶66, ¶67, ¶69 – FSMC represents itself as a secured creditor and/or cites case law regarding secured creditors.

The above representations contradict FSMC's June 12, 2026 Supplemental Opposition and June 29, 2026 Surreply.

48. On July 10, 2025, FSMC filed Proof of Claim No. 1-1 alleging a **secured** claim against the Debtor in the amount of $2,139,761.53:

a. FSMC asserted that "the claim is secured by a lien on real property."

b. FSMC asserted "the amount of the claim that is secured:  $2,139,761.53."

c. FSMC identified the basis for perfection as, among other things, "Deed of Trust, Prior Bankruptcy Agreement, Lis Pendens."

d. FSMC failed to disclose that the October 8, 2010 *Certificate of Satisfaction* released the 2006 Deed of Trust and the 2007 Modification, which FSMC now admits "was released" and "remains" released in its June 12, 2026 Supplemental Opposition.

49. On August 13, 2025, the Debtor filed an Objection to FSMC's Motion for Relief from Automatic Stay [Dkt 44], as amended on October 15, 2025 [Dkt 85 and 86], which are incorporated herein by reference.

50. On September 9, 2025, the above-referenced case was converted from Chapter 13 to Chapter 11.

51. FSMC continued to represent to this Bankruptcy Court that it held a present secured lien under the 2007 Deed of Trust.  On October 30, 2025, this Court held a hearing on FSMC's

Motion and granted FSMC's request to remand the case to the state court for further proceeding, case No. 485915-V ("State Court Litigation").

52. On June 12, 2026, in the related State Court litigation, FSMC filed a Supplemental Opposition to the Norrieses' February 2026 Supplemental filing. Specifically, FSMC states: "the 2007 Deed of Trust was released" by the October 8, 2010 *Certificate of Satisfaction* and that "the 2007 DOT remains (erroneously) released" unless equitable relief is granted. *See* Exhibit A

53. FSMC's June 12, 2026 Supplemental Opposition is the first filing, during the past 15 years of litigation, identified by the Debtor in which FSMC expressly admits that the 2007 Deed of Trust WAS RELEASED in 2010 on Debtor's personal home and REMAINS released unless equitable relief is granted.

54. Since filing its June 12, 2026 Supplemental Opposition, FSMC has reaffirmed that position in its June 29, 2026 Surreply [Dkt 139-1], again acknowledging that the 2007 Deed of Trust is "deemed released 'as of record' in the land records" and seeking equitable relief to restore the lien. FSMC therefore no longer contends that an enforceable recorded lien presently exists but instead seeks judicial restoration of lien rights in the future. *See* Exhibit D.

55. FSMC has not amended, withdrawn, or otherwise corrected its secured Proof of Claim following its June 12, 2026 and June 29, 2026 admissions concerning the released status of the 2007 Deed of Trust.

56. Pursuant to Fed. R. Bankr. P. 3007 and Local Bankruptcy Rule 3007-1, the Debtor files this Amended Objection to the Claim of FSMC.

## IV. GROUNDS FOR OBJECTION

57. Debtor objects to the secured status of the FSMC Claim because FSMC has not established that it holds an enforceable lien or security interest against the property.

### A. FSMC'S CURRENT ADMISSION DEFEATS THE PRIMA FACIE VALIDITY OF ITS ASSERTED SECURED CLAIM

58. Proof of Claim No. 1-1 asserts secured status based upon the 2007 Deed of Trust.

59. On June 12, 2026, FSMC materially changed its litigation position and admitted to the State Court that the 2007 Deed of Trust was released in 2010 and remains released unless equitable relief is granted.

60. FSMC's new position cannot establish a present secured claim as of the petition date:

    a. As of the petition date, FSMC had not obtained any state-court judgment reforming the released 2007 Deed of Trust.

    b. As of the petition date, FSMC had not obtained any state-court judgment restoring lien rights released by the 2010 *Certificate of Satisfaction.*

    c. As of the petition date, FSMC's request for equitable relief in state court remained pending and unresolved.

61. A pending request to obtain equitable restoration of lien rights in the future is not the same as a perfected lien existing on the petition date.

62. FSMC's asserted secured status, therefore, depends upon relief that had not been granted as of the petition date and still has not been granted.

63. FSMC failed to disclose or attach the 2010 *Certificate of Satisfaction* that released the underlying lien to its proof of claim in direct violation of Federal Rule of Bankruptcy Procedure 3001(d). FSMC's present position confirms that the omitted *Certificate of Satisfaction* was directly relevant to the asserted secured status of Claim No. 1-1.

11

64. FSMC knowingly filed this Claim (and two secured proofs of claim in the 2024 bankruptcy case) as a secured creditor despite now acknowledging that the Deed of Trust upon which that secured status depended had been released.

65. A sophisticated institutional lender should not be permitted to assert present secured status in one court while simultaneously acknowledging in another court that the very security instrument supporting that secured status "was released" and "remains" released unless equitable relief is granted. Such contradictory litigation positions undermine the integrity of the bankruptcy claims process.

66. FSMC seeks to obtain the protections and advantages afforded to a secured creditor under the Bankruptcy Code while simultaneously asking the Circuit Court to restore the very lien upon which that secured status depends. FSMC cannot file a secured Proof of Claim predicated upon an existing perfected lien while acknowledging in another court that the same Deed of Trust "was released" and "remains" released unless equitable relief is granted. Those positions are irreconcilable and require this Court to reexamine the secured status asserted in Proof of Claim No. 1-1.

67. Under 11 U.S.C. § 502(b)(1), a claim must be disallowed if it is unenforceable against the debtor or property of the debtor under applicable non-bankruptcy law. FSMC now acknowledges that its Deed of Trust remains released unless equitable relief is granted. Accordingly, FSMC has not established that it held an enforceable security interest on the petition date, and Claim No. 1-1 cannot be allowed as a secured claim.

68. Fed. R. Bankr. P. 9011 requires that all factual contentions have evidentiary support. FSMC knowingly asserted secured status for a lien that FSMC now acknowledges "was released" and "remains" released unless equitable relief is granted.

## B. FSMC HAS TAKEN MATERIALLY INCONSISTENT POSITIONS REGARDING ITS ASSERTED SECURITY INTEREST

69. FSMC's June 12, 2026 filing did not occur in isolation. Rather, it represents the latest in a series of materially different positions taken by FSMC regarding the same alleged security interest over more than fifteen years.

70. The following judicial filings demonstrate the evolution of FSMC's position regarding its asserted security interest.

71. **2010 Foreclosure** (case no. 327517-V) — On February 24, 2010, FSMC's Substitute Trustee filed an Order to Docket in the Montgomery County Circuit Court ("2010 Foreclosure Case"), Exhibit Q:

    a. **Operative Deed:** FSMC commenced a foreclosure action identifying the September 28, 2007 Deed of Trust as the operative lien instrument and attached the recorded instrument, which expressly states on its face that it "is to act as modification" of the September 29, 2006 Deed of Trust.

    b. **The 2007 DOT States it is a Modification:** Significantly, the recorded 2007 deed of trust attached to that filing expressly states on its face on page 1 that it "is to act as modification" of the September 29, 2006, Deed of Trust.

    c. **Maso Affidavits:** FSMC's General Counsel, Megan Maso, executed multiple sworn affidavits that the obligation was secured by the 2007 Deed of Trust and stated that FSMC was the holder of the September 29, 2007 instrument. See Exhibit Q.

    d. **Prensky Affidavits:** FSMC's Substitute Trustee, likewise, executed multiple sworn affidavits and further swore that FSMC possessed the right to foreclose pursuant to the 2007 Deed of Trust. See Exhibit Q.

72. **2015 Foreclosure** (case no. 402108-V) — On March 12, 2015, FSMC's Substitute Trustee filed an Order to Docket ("2015 Foreclosure Case"):

   a. **Operative Deed:** FSMC's Substitute Trustee averred that the <u>September 29, **2006**, Deed of Trust</u> was valid and enforceable and used the <u>2006 Deed of Trust</u> as the operative lien instrument supporting the foreclosure.

   b. **FSMC Described the 2007 DOT as a Modification:** In its filing, FSMC expressly described the 2006 DOT as the operative lien supporting the foreclosure. They admitted that the September 28, 2007 instrument as a "modification" of 2006 Deed of Trust.

   c. **Alden Affidavit:** FSMC's President, Mr. David Alden, executed a sworn affidavit stating that FSMC was the holder of the September 29, 2006 Note, secured by the 2006 Deed of Trust, **"as modified"** by the September 28, 2007 instrument, and further swore that FSMC possessed the right to foreclose pursuant to that 2006 DOT. *See* Exhibit P.

   d. **Maso Affidavit:** FSMC's General Counsel, Ms. Megan Maso, likewise executed a sworn affidavit that the obligation was secured by the 2006 Deed of Trust. Exhibit P.

   e. **Prensky Affidavits:** The Substitute Trustee executed a sworn affidavits that the attached 2006 Deed of Trust was a true and accurate copy of the secured lien that was being foreclosed upon. In addition, Mr. Prensky averred the validity of the Deed of Appointment of Substitute Trustee, which contradicted his 2010 affidavit. Exhibit P.

   f. **Deed of Appointment of Substitute Trustee, March 12, 2015:** FSMC's President, Mr. Alden, executed and recorded a Deed of Appointment of Substitute Trustee representing that FSMC held a "secured" interest based upon the 2006 DOT, "as modified by instrument dated September 28, 2007."

   *See* Exhibit P, Order to Docket.

14

FSMC now admits in their June 12, 2026 Supplemental Opposition that the lien "was released" in 2010 and "remains" released. Since FSMC held no lien since 2010, the 2015 Foreclosure could not be filed, in violation of Maryland Rule 14-207.

73. **State Court Litigation** (case no. 485915-V) — On October 2, 2023, eight years later, in a sworn affidavit submitted in the related State Court Litigation proceedings, Mr. Alden materially changed FSMC's description of the transaction and his March 12, 2015 Affidavit, in which he represented the 2006 deed of trust to be the operative security interest. *See* Exhibits V and P.

Mr. Alden stated that the 2006 lien was released: "the [2006] prior loan *was secured* by a deed of trust dated September 29, 2006." Rather than describing the September 28, 2007 instrument as a modification of the 2006 DOT, he repeatedly characterized it as a new refinance loan, secured by the 2007 Deed of Trust, and asserted to the state court that the 2007 Deed of Trust was valid and enforceable.

74. **State Court Litigation** (case no. 485915-V) — On June 12, 2026, FSMC now adopts yet another position, i.e., the lien "was released" and "remains" released. In its Supplemental Opposition, FSMC affirmatively acknowledges that the 2007 Deed of Trust **"was released"** and further admits that the 2007 Deed of Trust **"remains released"** unless equitable relief is granted. *See* Exhibit A.

75. **Bankruptcy Proof of Claim** (No. 6-1, case no. 24-11775-MCR) — In its Proof of Claim, FSMC asserted that their claim was secured by a lien on real property based on the 2007 deed of trust. The amount claimed was $2,018,067.70.

15

76. **Bankruptcy Proof of Claim** (No. 6-2, case no. 24-11775-MCR) — In its Proof of Claim, FSMC reasserted that their claim was secured by a lien on real property based on the 2007 deed of trust. The amount claimed was $2,018,067.70.

77. **Bankruptcy Proof of Claim** (No. 1-1, case no. 25-14367-MCR) — In its Proof of Claim, FSMC asserted that their claim was secured by a lien on real property based on the 2007 deed of trust. The amount claimed was $2,139,761.53.

78. **Bankruptcy Objection to Disclosure Plan** — On March 12, 2026, FSMC likewise objected to confirmation of the Debtor's Chapter 11 Plan on the express ground that it was a "secured creditor" holding a present security interest under the 2007 Deed of Trust. [Dkt 126]. FSMC's June 12, 2026 Supplemental Opposition materially changes the factual premise underlying that objection by acknowledging that the 2007 Deed of Trust was released in 2010 and remains released unless equitable relief is granted.

79. **Bankruptcy Surreply** — Since filing its June 12, 2026 Supplemental Opposition, FSMC has reaffirmed that position in its June 29, 2026 Surreply, again acknowledging that the 2007 Deed of Trust was released of record and seeking equitable relief to restore the lien. FSMC therefore no longer contends that an enforceable recorded lien presently exists but instead seeks judicial restoration of lien rights. *See* Exhibit D.

80. These inconsistencies are directly relevant to the prima facie validity of Proof of Claim No. 1-1. The Debtor has produced FSMC's own judicial admissions, sworn affidavits, recorded land records, and contemporaneous loan documents rebutting the prima facie validity of Proof of Claim No. 1-1. Accordingly, FSMC bears the burden of proving the factual and legal basis for the secured status asserted in its Proof of Claim.

81. FSMC's own sworn affidavits and judicial filings demonstrate that its position regarding the existence and enforceability of its alleged lien has materially changed over time, warranting careful scrutiny of the claim asserted in this Chapter 11 case.

82. Accordingly, FSMC's current position not only undermines the secured status asserted in Proof of Claim No. 1-1, but also warrants careful scrutiny of the factual and legal basis for the claim under the standards governing claim objections.

## C.  MULTIPLE LEGAL GROUNDS EXTINGUISHED FSMC'S ENFORCEABLE SECURITY INTEREST

83. FSMC's asserted security interest was extinguished through multiple legal events, including the following:

(1)  TILA Rescissions – the TILA Rescissions issued on July 23, 2009 and April 27, 2010, which FSMC failed to challenge within 20 days as required by law, released the security interest by operation of law;

(2)  2010 *Satisfaction* – the *Certificate of Satisfaction*, recorded by FSMC in the County Land Records, released the 2006 Deed of Trust along with the 2007 Modification Deed of Trust, which FSMC admitted on June 12, 2026 and June 29, 2026 released the underlying lien; and

(3)  Statute of Limitations – Even if the lien is secured, at the outset, the 12-year statute of limitations period extinguished the lien on March 26, 2020.  Md. Code, Real Prop. § 7-106(c)(1)(i).

## 1. FSMC'S Claim was Rendered Void Under Federal Truth in Lending Laws (2009)

84. As stated in the Amended Opposition [Dkt 85 and 86], the purported lien asserted by FSMC was extinguished through two timely rescission notices issued by the Debtor and her husband (the "Norrises") on or about July 23, 2009 and April 27, 2010, for violations

under the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq §1635, and others, which rendered FSMC's lien void by operation of law ("TILA Rescissions").[1,2]

85. FSMC failed to challenge the rescissions within twenty (20) days as required by Federal laws.

86. Under the statute, once the borrower rescinds the loan transaction, the security interest in the subject property becomes void and the borrower is no longer liable for any amount, including any finance charge, 12 C.F.R. § 226.23(d)(1).

87. The Supreme Court case, *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015), held that the loan is rescinded and effectuated by operation of law *"when the Borrower notifies the lender of his intention to rescind".*

## 2. FSMC's Claim was Released by the *Certificate of Satisfaction* (2010)

### a. FSMC Directed the Closing Attorney to Record the 2007 Instrument as a Modification

88. FSMC's own closing instructions on page 2 directed the settlement attorney to add modification language to the deed of trust. The closing instructions state:

> "ATTORNEY TO ADD LANGUAGE TO DEED OF TRUST IN REFERENCE TO MODIFICATION." (Exhibit F, p. 2).

89. The 2007 recorded instrument states on page 1, ¶1:

> "This Deed of Trust is to act as **modification** of Loan No. 20206071 secured by Deed of Trust at Liber 33167, Folio 222 for the benefit of the same lender and same borrower into new loan number 20207064 to provide a six month extension." (Exhibit H, liber 34934, folio 089).

---

[1] Construction-to-Permanent loans such as this are covered under the TRID Rule, 12 CFR § 1026.19(e)(1)(i). See Consumer Financial Protection Bureau (CFPB), *TILA-RESPA Integrated Disclosures for Construction Loans: Guide for separate construction and permanent phase disclosures*, p. 4. §1026.19(e),(f),(g); §1026.37, §1026.38. Suppl. I to part 1026.

[2] As the U.S. Supreme Court held in *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015), a borrower may exercise their right to rescind within three years for violations of the Truth-in-Lending Act, which terminates the lien by operation of law upon notice.

90. The Recording Affidavit states: "that this deed of trust...is to **modify** a construction loan that they currently have with First Savings Mortgage Corporation...". *See* Exhibit I, liber 34934, folio 104.

91. The Maryland Land Instrument Intake Sheet identified the transaction as a "Basically **Loan Modification.**" *See* Exhibit J, liber 34934, folio 105.

92. The Land Records charged $0 in State transfer tax and $0 in County transfer tax, consistent with the instrument being treated as a modification rather than a new refinance transaction. See Exhibit H, liber 34934, folio 089, Land Records p. 1, stamp on top right.

93. These contemporaneous documents demonstrate that the modification language was intentionally incorporated into the transaction before closing, reflected in FSMC's own closing instructions, acknowledged by the borrowers and settlement attorney in the recording affidavit, incorporated into the recorded 2007 Deed of Trust, and reflected on the Land Instrument Intake Sheet. Each of these contemporaneous documents predates the present litigation by nearly two decades.

94. FSMC now seeks equitable relief in the Circuit Court to remove or alter the modification language from the 2007 recorded instrument nearly nineteen years after it was recorded.

95. FSMC also seeks equitable relief to restore lien rights that FSMC now states were released by the October 8, 2010 *Certificate of Satisfaction* more than fifteen years ago. Exhibit E.

**b. The 2010 *Certificate of Satisfaction* Released the 2006 DOT and 2007 Modification**

96. On October 8, 2010, FSMC recorded a *Certificate of Satisfaction* in the Maryland Land Records, which identified the 2006 Deed of Trust as being released. *See* Exhibit E.

97. Because the 2007 recorded instrument expressly states that it acted as a modification of the 2006 DOT, the *Certificate of Satisfaction* released the 2006 deed and 2007 Modification.

19

98. As of June 12, 2026, FSMC now agrees with the Debtor's long-standing position that the 2006 Deed of Trust and the 2007 Modification Deed of Trust were released in 2010 and remain released. Exhibits A, D.

99. Maryland Real Property §3-105 provides that a recorded *Certificate of Satisfaction* has the same effect as a release executed by the holder of the mortgage or deed of trust. By operation of Md. Code, Real Prop. §3-105(a), the recordation of the October 8, 2010 *Certificate of Satisfaction* at Liber 40148, Folio 396 dissolved the lender's security interest as a matter of law, leaving no active lien in place as of the petition date.

100. Federal bankruptcy law determines secured status based upon the parties' rights as they existed on the petition date. A pending request for equitable relief to revive a lien in the future is not equivalent to an existing perfected security interest.

101. Accordingly, FSMC's current position confirms that, as of the petition date, the 2007 Deed of Trust had been released for more than fifteen years and remained released unless and until the Circuit Court grants equitable relief. *See* Exhibits A, D.

### 3. FSMC's Claim is Unenforceable Under Maryland Laws

102. The Debtor objects to FSMC's Proof of Claim filed pursuant to 11 U.S.C. § 502(b)(1) on the grounds that the Claim is unenforceable under several applicable non-bankruptcy laws.

### a. Maryland § 7-106(c)(1)(i)

103. Bankruptcy courts apply state statute of limitations law to determine enforceability. Under 11 U.S.C. § 502(b)(1), a claim shall be disallowed to the extent it is unenforceable against the debtor under applicable non-bankruptcy law.

104. FSMC's claim is time-barred for specialties (including certain sealed instruments), under Md. Code, Ann. R.P. § 7-106(c)(1)(i), which states that if a lien remains unreleased, it

20

automatically terminates when "12 years have elapsed" since the "maturity date as set forth in the instrument," unless a continuation statement is recorded among the land records.

105. FSMC recorded no continuation statement in the Land Records relating to the instrument.

106. In this case, FSMC asserts secured status based upon the 2007 Modification deed dated September 28, 2007 for the construction loan to provide a six-month extension. This recorded modification instrument has a stated maturity date of March 27, 2008. See Exhibit H, page 2 of 15, recorded at Liber 34934, page 090. The statute of limitations therefore began to run on that date.

107. Even assuming, solely for purposes of argument, that FSMC previously held an unreleased lien, the limitations period for FSMC's Claim for the construction loan expired after 12 years on March 26, 2020.

108. In March 2015, FSMC filed a foreclosure action based on affidavits representing under oath that the 2006 Deed of Trust was valid and enforceable, even though FSMC now admits that same Deed of Trust "was released" by the October 8, 2010 *Certificate of Satisfaction* and "remains" released. On June 14, 2016 and August 31, 2016, FSMC issued a *Notice of Trustee Sale* based upon the 2006 Deed of Trust to sell Debtor's home at auction, which FSMC now admits was released in 2010, six years prior to their issuance of the Notice of Trustee Sale. *See* Exhibits R and S.

109. In September 2016, the Debtor filed bankruptcy to stop the foreclosure sale that FSMC initiated under the 2006 Deed of Trust, which FSMC now acknowledges had been released.

110. In their June 29, 2026 Surreply, FSMC contends that 11 U.S.C. § 108(c) preserves its rights. [Dkt 139-1]. It does not. Section 108(c) preserves deadlines to enforce existing rights; it does not recreate property rights that have already been extinguished under

21

applicable state law. Rather, it provides a limited extension of time for commencing or continuing actions when such actions are stayed by the Bankruptcy Code. Here, Debtor's objection is based upon the fact that, under Maryland law, the Deed of Trust had already been released and, independently, the lien terminated by operation of Md. Code, Real Property § 7-106.

111. In any case, FSMC now argues in its June 12, 2026 Supplemental Opposition and June 29, 2026 Surreply filings that their lien "was released" in 2010 and "remains" released and that "§ 7-106(c)(1)(i) is inapplicable." Accordingly, FSMC cannot simultaneously contend that § 108(c) preserved lien rights while also maintaining that § 7-106 never applied because the lien had already been released.

112. This is a statute of repose, which extinguishes a right. FSMC argues the 2007 deed of trust can be revived under to the Court's equitable jurisdiction if the state court determines the 2010 *Certificate of Satisfaction* released the 2007 Deed of Trust. No court has jurisdiction to revive a right extinguished by the legislature. FSMC's argument that equitable jurisdiction allows the Court to ignore the statute of repose is misplaced. "In light of the plain language and legislative history of § 7-106(c)(2), the presumption in § 7-106(c)(1) is conclusive and termination of the mortgage lien, under the stated conditions, is automatic." *Helman v. Kim*, 130 Md. App. 181, 190 - 191 (2000). (Legislative intent of § 7-106(c)(2) is to give buyers and real estate settlement/title companies confidence that a "defunct but unreleased mortgage" could not "spring back to life."). *See* Exhibit B.

113. A claim that is unenforceable under applicable non-bankruptcy law is subject to disallowance under 11 U.S.C. §502(b)(1).

### b. Maryland House Bill 769 (effective June 1, 2025)

114. In addition, assuming solely for purposes of argument that FSMC had provided a permanent mortgage, which they failed to do, Md. Code, Ann. Real Property § 7-105.1 (effective June 1, 2025), Maryland's House Bill 769, establishes a 10-year statute of limitations to initiate a foreclosure action from the date of default.

115. Because FSMC failed to commence a valid foreclosure action within that 10-year statutory window, any secured enforcement mechanism against the Property is forever barred and extinguished by operation of law. The time commenced running upon the maturity date of March 27, 2008, and fully expired on March 27, 2018.

116. A claim that is unenforceable under applicable non-bankruptcy law is subject to disallowance under 11 U.S.C. §502(b)(1).

### c. Maryland § 5-101

117. Because FSMC now acknowledges that the 2007 Deed of Trust was released and remains released, FSMC may contend that any surviving claim exists only as an unsecured contractual obligation. Debtor disputes that any such claim remains enforceable because the underlying construction loan matured on March 27, 2008 and any action on that obligation is time-barred under applicable Maryland law. Under Maryland Code, Courts and Judicial Proceedings Article § § 5-101, a civil action based upon a breach of contract or an unsealed note must be commenced within three (3) years from the date of default.

118. By acknowledging that the 2007 Deed of Trust "was released" and "remains" released, FSMC no longer contends that it presently holds an enforceable recorded lien, but instead seeks equitable restoration of that lien. To the extent FSMC contends that any obligation nevertheless survives, such obligation no longer derives from an enforceable deed of trust, but only from whatever contractual rights, if any, remain after the release of the security

23

instrument. The Debtor disputes that any such contractual rights remain enforceable under applicable Maryland law.

119. Because the underlying construction loan matured on March 27, 2008, the 3-year statute of limitations expired on March 28, 2011, rendering any surviving contractual claim unenforceable under applicable non-bankruptcy law.

120. A claim that is unenforceable under applicable non-bankruptcy law is subject to disallowance under 11 U.S.C. §502(b)(1).

121. Accordingly, regardless of how FSMC attempts to characterize the underlying obligation, Proof of Claim No. 1-1 is unenforceable under applicable non-bankruptcy law. Because 11 U.S.C. § 502(b)(1) requires disallowance of claims that are unenforceable under applicable law, the Claim should be disallowed.

## D. FSMC NEVER COMPLETED ITS OBLIGATIONS UNDER THE CONSTRUCTION-TO-PERMANENT LOAN

### 1. FSMC Failed to Fund the Full Loan Amount

122. The transaction at issue was not an ordinary residential mortgage, but rather a construction-to-permanent loan under which FSMC agreed to finance the construction of the Debtor's principal residence and, upon satisfaction of specified conditions, convert the construction financing into permanent mortgage financing.

123. The Construction Loan Agreement, ¶15, required FSMC to advance the balance of the loan proceeds, "Upon completion of the Residence and obtaining all required governmental approvals ... Lender shall advance the proceeds of the Loan which have not theretofore been disbursed." *See* Exhibit G.

124. Despite that contractual obligation, FSMC failed to fully fund the construction loan. Approximately **$31,890** of the committed loan proceeds remained undisbursed. FSMC's

24

own loan records identify this amount as the remaining balance of undisbursed construction loan proceeds. *See* Exhibits M and N.

## 2. FSMC Failed to Convert the Loan to Permanent Financing

125. FSMC likewise failed to consummate the contemplated permanent financing. Although the parties entered into the construction-to-permanent loan transaction with the expectation that the construction loan would convert into permanent financing upon completion of construction, FSMC never closed or funded the permanent mortgage contemplated by the loan documents.

126. The parties never executed a permanent promissory note, permanent deed of trust, Truth in Lending disclosures for permanent financing, HUD-1/Closing Disclosure, title insurance endorsement, or other customary permanent loan closing documents.

127. FSMC repeatedly acknowledged that the contemplated permanent financing had not yet occurred. On November 22, 2010, Tom Norris advised FSMC President Larry Pratt that he had the funds to complete construction, but that he "need[ed] to know we have a perm[anent mortgage]." Approximately one month after recording the *Certificate of Satisfaction*, unknown to the Norrises, Mr. Pratt instructed them to move into the residence and stated, "We are going to provide permanent financing as I committed to you a few months ago." *See* Exhibit K.

128. On July 25, 2014, nearly six years after the construction loan matured, FSMC President Larry Pratt again acknowledged that the contemplated permanent financing had not yet occurred and described the permanent financing as a future event and that the full loan amount had not been disbursed. *See* Exhibit M.

129. In an email to the Debtor and her husband, Mr. Pratt stated that FSMC was "glad now that you are in position for us to move to a permanent position" while simultaneously proposing new permanent mortgage terms.  In that email, Mr. Pratt attached FSMC's Construction Loan Statement, which reflected that only $1,468,110 of the original $1,500,000 construction loan had been advanced and that **"Funds Left to Draw" of $31,890** still remained outstanding.  *See* Exhibits M and N.

130. These contemporaneous records further support the Debtor's position that FSMC never fully funded the construction loan and never consummated the permanent financing contemplated by the original construction-to-permanent loan transaction.  FSMC never created or recorded a new deed of trust securing a permanent mortgage loan.

131. These facts further demonstrate that FSMC's present claim is not based upon a fully performed permanent mortgage transaction, but upon an incomplete construction-to-permanent loan that FSMC itself never consummated.

132. Accordingly, FSMC never fully performed its obligations under the construction loan and never completed the permanent financing contemplated by the parties' original transaction. These facts are directly relevant to FSMC's assertion that it presently holds an enforceable secured claim based upon the original construction loan documents.

### V. CLAIM OBJECTION STANDARD

133. Section 502(a) of the Bankruptcy Code provides that a proof of claim is deemed allowed unless a party in interest objects.

134. Section 502(b)(1) provides that, upon objection, the Court shall determine the amount of the claim and shall allow the claim except to the extent that the claim is unenforceable against the Debtor or property of the Debtor under any agreement or applicable law.  The

validity and enforceability of a creditor's rights are determined by applicable non-bankruptcy law.  See *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000).

135. Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim.

136. The Fourth Circuit has explained that a proof of claim is prima facie valid, but that once the debtor introduces evidence sufficient to rebut that presumption, the burden shifts back to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. In re *Harford Sands Inc.,* 372 F.3d 637, 640 (4th Cir. 2004).

137. The Debtor has rebutted the prima facie effect of Proof of Claim No. 1-1 by producing FSMC's own June 12, 2026 Supplemental Opposition, the 2010 *Certificate of Satisfaction,* the 2007 recorded instrument, the closing instructions, the land instrument intake sheet, and the chronology of FSMC's prior sworn representations and current admissions concerning secured status.

138. Once the Debtor rebuts the prima facie validity of the Proof of Claim with competent evidence, the burden shifts to FSMC to prove the validity and secured status of its claim.

139. FSMC therefore bears the burden of proving the validity, amount, and secured status of Claim No. 1-1.

140. Bankruptcy courts determine the status of a secured claim based upon the facts existing on the petition date.  A creditor seeking secured status bears the burden of establishing that it held an enforceable lien as of that date.  FSMC's present request for equitable relief in state court cannot itself establish that such a lien existed on the petition date.

## A. SECTION 506 REQUIRES A PRESENT INTEREST IN PROPERTY OF THE ESTATE

141. Section 506(a)(1) provides that an allowed claim is a secured claim only to the extent of the value of the creditor's interest in the estate's interest in property.

142. A creditor asserting secured status must therefore establish an enforceable interest in property of the estate.

143. FSMC's Proof of Claim asserts secured status based upon a Deed of Trust that FSMC now states "was released" in 2010 and "remains" released unless equitable relief is granted. Accordingly, FSMC cannot establish that Claim No. 1-1 is an allowed secured claim because it did not hold an enforceable security interest as of the petition date.

144. Because FSMC had not obtained equitable relief restoring lien rights as of the petition date, and because FSMC now states the 2007 Deed of Trust remains released, FSMC cannot establish that Claim No. 1-1 is an allowed secured claim.

145. Section 506(d) further provides that, subject to its terms and applicable law, a lien securing a claim that is not an allowed secured claim is void. Debtor does not request relief under § 506(d) at this stage. Rather, Debtor cites § 506(d) as part of the Bankruptcy Code's statutory framework distinguishing allowed secured claims from claims that are not entitled to secured status.

## B. EQUITABLE RELIEF REMAINS UNADJUDICATED AND CANNOT SUPPORT PRESENT SECURED STATUS

146. FSMC may contend that it is entitled to equitable relief in the Circuit Court.

147. The Debtor disputes FSMC's entitlement to equitable relief.

148. The parties' dispute concerning equitable relief remains pending in the Circuit Court.

149. The Bankruptcy Court need not decide in this claim objection whether the Circuit Court ultimately will grant or deny equitable relief.

28

150. The issue before this Court is whether Proof of Claim No. 1-1 is enforceable under applicable non-bankruptcy law and, if so, whether FSMC has established that any portion of that Claim is entitled to secured status as of the petition date.

151. FSMC's pending request for equitable relief cannot convert a released deed of trust into a present secured claim unless and until such relief is granted.

152. If the Circuit Court later grants equitable relief, FSMC may seek appropriate relief from this Court at that time.

153. Until then, FSMC has not established either an enforceable secured claim or any other enforceable claim under applicable law.

## C. FSMC'S PRIOR REPRESENTATIONS SUPPORT REEXAMINATION OF CLAIM NO. 1-1

154. For more than a decade, FSMC repeatedly represented that it held a valid and enforceable lien against the Debtor's home.

155. FSMC made such representations in foreclosure proceedings, bankruptcy proceedings, land-record filings, and the related state-court litigation.

156. FSMC's repeated prior representations are summarized in Exhibit C to the Debtor's Motion to Continue Confirmation Hearing and attached herein.

157. FSMC's June 12, 2026 Supplemental Opposition materially changes the premise of its asserted secured status by acknowledging that the 2007 Deed of Trust was released in 2010 and remains released unless equitable relief is granted.

158. Maryland recognizes judicial estoppel as a doctrine that may preclude a party from taking inconsistent positions in litigation where the elements are satisfied. *Bank of New York Mellon v. Georg,* 456 Md. 616 (2017).

159. The Debtor does not ask this Court to resolve all issues of judicial estoppel in this claim objection. However, FSMC's inconsistent positions are relevant to whether Proof of Claim No. 1-1 should retain prima facie validity and whether FSMC has met its burden to prove secured status.

160. FSMC should be required to reconcile its sworn Proof of Claim asserting secured status with its June 12, 2026 state-court filing and June 29, 2026 Surreply stating that the 2007 Deed of Trust was released and remains released.

## D. LACHES AND REFORMATION PRINCIPLES FURTHER SUPPORT REQUIRING FSMC TO PROVE ITS CLAIM

161. FSMC's state-court request for equitable relief seeks to alter the effect of recorded land records nearly nineteen years after the 2007 instrument was recorded and more than fifteen years after the Certificate of Satisfaction was recorded.

162. Maryland law recognizes reformation as an equitable remedy.

163. Maryland law also recognizes that equitable relief may be barred or limited by laches, unreasonable delay, prejudice, and related equitable principles.

164. In *LaSalle Bank, N.A. v. Reeves*, 173 Md. App. 392 (2007), the Appellate Court of Maryland addressed a lender's action seeking reformation of a deed of trust and explained that laches and analogous limitations principles may apply in equity.

165. Here, on June 12, 2026, after over 15 years of litigation, FSMC has admitted that it holds no secured lien, contrary to Proof of Claim No. 1-1. Accordingly, Proof of Claim No. 1-1 should not be allowed as a secured claim and, for the additional reasons set forth herein, should be disallowed under 11 U.S.C. § 502(b)(1).

## VI. REQUESTED RELIEF

WHEREFORE, the Debtor respectfully requests that this Court enter an Order:

a. Sustaining this Amended Objection and disallowing Proof of Claim No. 1-1 pursuant to 11 U.S.C. § 502(b)(1), because FSMC has failed to establish an enforceable secured claim or any other enforceable claim under applicable non-bankruptcy law;

b. Alternatively, determining that FSMC has failed to establish that Claim No. 1-1 is an allowed secured claim under 11 U.S.C. §§ 502 and 506 because it did not hold an enforceable security interest as of the petition date;

c. If the Court determines that any portion of Claim No. 1-1 survives, requiring FSMC to prove the legal basis, amount, enforceability, perfection, priority, and classification of any such surviving claim by competent evidence;

d. Reserving the Debtor's rights to object to the amount, enforceability, interest, fees, charges, and unsecured portion of Claim No. 1-1;

e. Reserving the Debtor's rights to seek sanctions, fees, costs, or other relief, if warranted, by further proceedings; and

f. Granting such other and further relief as the Court deems just and proper.

Dated: July 1, 2026

Respectfully submitted,

Elizabeth Norris
P. O. Box 317
Ashton, MD 20861
(240) 786-5691 office
Debtor

*[Notice Pursuant to Rule 3007-1 and Certificate of Service to Follow]*

31

NOTICE PURSUANT TO LOCAL RULE 3007-1:

WITHIN THIRTY (30) DAYS AFTER THE DATE ON THE CERTIFICATE OF SERVICE OF THIS OBJECTION, THE CLAIMANT MAY FILE AND SERVE A MEMORANDUM IN OPPOSITION, TOGETHER WITH ANY DOCUMENTS AND OTHER EVIDENCE THE CLAIMANT WISHES TO ATTACH IN SUPPORT OF ITS CLAIM, UNLESS THE CLAIMANT WISHES TO RELY SOLELY UPON THE PROOF OF CLAIM; AND ANY INTERESTED PARTY MAY REQUEST A HEARING THAT WILL BE HELD IN THE COURT'S DISCRETION. THE COURT MAY OVERRULE THE OBJECTION OR SET A HEARING ON THE OBJECTION IF THE OBJECTION FAILS TO INCLUDE ADEQUATE SUPPORT FOR THE REQUESTED RELIEF, EVEN IF A RESPONSE IS NOT FILED.

_____
Elizabeth Norris
Debtor


**CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** that on the 1st day of July, 2026, a copy of the foregoing Amended Objection to Claim of Creditor First Savings Mortgage Corporation (Claim No. 1-1) (the "Amended Objection") was mailed, by first class mail, postage prepaid, to the parties requesting notice listed in the attached Bankruptcy Court's label matrix including the parties listed below.

Jeanette Rice
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770
*Chapter 11 Trustee*

Bizhan Beiramee
Beiramee Law Group, P.C.
7508 Wisconsin Avenue, Second Floor
Bethesda, Maryland 20814
*Counsel for First Savings Mortgage Corporation*

Mark A. Neal
U.S. Bankruptcy Court
Greenbelt Division
6500 Cherrywood Lane, Suite 300
Greenbelt, MD  20770
*Clerk of the Bankruptcy Court*

_____
Elizabeth Norris
Debtor

32

Label Matrix for local noticing
0416-0
Case 25-14367
District of Maryland
Greenbelt
Wed Jul  1 12:52:19 EDT 2026

Deutsche Bank Trust Company Americas, as Tru
ATTN: Bankruptcy Department
P O Box 24605
West Palm Beach, FL 33416-4605

Deutsche Bank Trust Company Americas, as Tru
BWW Law Group, LLC
6003 Executive Blvd, Suite 101
Rockville, MD 20852-3813

First Savings Mortgage Corporation
BEIRAMEE LAW GROUP, P.C.
7508 Wisconsin Avenue, Second Floor
Bethesda, MD 20814-3561

PHH Mortgage Corporation
ALDRIDGE PITE, LLP
3333 Camino del Rio South, Suite 225
San Diego, CA 92108-3808

US Trustee - Greenbelt 11
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770-6305

Bizhan Beiramee, Esq.
7508 Wisconsin Avenue
Second Floor
Bethesda, MD 20814-3561

First Savings Mortgage Corp.
18444 Westpark Dr., 4th Floor
McLean, VA 22012

First Savings Mortgage Corp.
8444 Westpark Drive
4th Floor
McLean, VA 22102-5137

First Savings Mortgage Corporation
c/o Beiramee Law Group, P.C.
7508 Wisconsin Avenue, Second Floor
Bethesda, MD 20814-3561

Montgomery County Division of Treasury
255 Rockville Pike, L-15
Rockville, MD 20850-4188

PHH Mortgage
1 Mortgage Way
Mount Laurel, NJ 08054-4624

S & Q Lending, LLC
1120 Route 73: Suite 420
Mt. Laurel, NJ 08054-5109

SBA
14925 Kingsport Road
Fort Worth, TX 76155-2243

SBA
P.O. Box 3918
Portland, OR 97208-3918

SECU
P.O. Box 2070
Glen Burnie, MD 21060-2070

SECU
P.O. Box 23896
Baltimore, MD 21298-0001

State Employees Credit Union
P.O.Box 2070
Glen Burnie, MD 21060-2070

Truist Bank c/o BB&T
P.O. Box 65092
Richmond, VA 23286-0001

Truist Bank, Support Services
PO Box 85092
Richmond, VA 23285-5092

U.S. SMALL BUSINESS ADMINISTRATION
14925 KINGSPORT ROAD
FORT WORTH, TX 76155-2243

Elizabeth Selina Norris
P.O. Box 317
Ashton, MD 20861-0317

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)For Internal Use Only

(d)Deutsche Bank Trust Company Americas, as T
ATTN: Bankruptcy Department
P O Box 24605
West Palm Beach , FL 33416-4605

(d)S&Q Lending LLC
1120 Route 73, Suite 420
Mt. Laurel, NJ 08054-5109

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No: 25-14367-MCR |
| ELIZABETH NORRIS | * | Chapter 11 |
| Debtor | * | |

**ORDER SUSTAINING OBJECTION TO
CLAIM NO. 1 OF FIRST SAVINGS MORTGAGE CORPORATION**

Upon consideration of the Objection to Claim of First Savings Mortgage Corporation

(Claim No. 1) (the "FSMC Objection") filed by Elizabeth Norris, the debtor ("Debtor"), herein,

and the Court's finding good cause therefor, it is, by the United States Bankruptcy Court for the

District of Maryland, ORDERED:

1.  That the Objection is hereby SUSTAINED.
2.  That Proof of Claim No. 1-1 is hereby disallowed to the extent set forth in the Court's ruling.

cc:    Debtor
       Attorney for Debtor – *pro se*
       Trustee
       Creditors

**END OF ORDER**

1